GUIDRY, J.
12This is an appeal of a judgment granting the Louisiana Department of Health and Hospitals (DHH) reimbursement from the proceeds of a personal injury settlement that the injured tort victim received pursuant to a compromise of the victim’s claims against the Louisiana Department of Transportation and Development (DOTD). For the following reasons, we affirm.
*965 FACTS AND PROCEDURAL HISTORY
A consent judgment was signed by the district court on April 6, 2009, which adopted an agreement between the DOTD and Juanita Christine Paulsell to settle a personal injury suit that Ms. Paulsell filed against the DOTD on behalf of her daughter, Patricia Jolynn Paulsell-Lathrop, for the severe injuries her daughter sustained in a motorcycle accident that occurred on June 13, 2005.[1] The consent judgment awarded Patricia, in part, $1,250,000 for future medical expenses to be paid as incurred from the Future Medical Care Fund, as authorized by La. R.S. 39:1533.2.
On September 7, 2011, the DHH filed a petition for intervention in the district court, asserting the following:
As a direct result of the injuries received by Patricia Jolynn Paulsell-La-throp in the [June 13, 2005[2]] accident described in Plaintiffs Petition for Damages and Request for Trial by Jury filed in these proceedings, DHH has paid $203,788.28 in medical assistance payments and/or medical expenses on behalf of Patricia Jolynn Paulsell-Lathrop of which $82,833.79 represents payments for services rendered on or before April 06, 2009 and $120,954.49 represents payments for services rendered on and after April 07, 2009.
3.
DHH was not served with the Petition for Damages and Request for Trial by Jury filed by Plaintiff nor was DHH provided jsthirty days written notice pri- or to the April 6, 2009 Consent Judgment as required by LSA R.S. 46:446(B).
4.
Under the provisions of R.S. 46:446 and the April 6, 2009 Consent Judgment, DHH has a cause of action against the defendants in intervention to recover the medical assistance payments DHH paid on behalf of Patricia Jolynn Paulsell-Lathrop as a result of the injuries sustained in the [June 13, 2005] accident.
Named as defendants in the intervention were Ms. Paulsell, as curatrix of Patricia, Ms. Paulsell’s attorneys, Nelson W. Wa-gar, III and Ronnie G. Penton, the DOTD, and the State of Louisiana through the Office of Risk Management (ORM). Ms. Paulsell generally denied the allegations of the petition for intervention and further answered the petition to assert: that the DHH failed to state a claim; that its claims, if any, were barred by prescription; that it was not entitled to the provisions of La. R.S. 46:446, because the party from which DHH seeks reimbursement was not a “third-party tortfeasor,” but was also the State of Louisiana; that if its claim for reimbursement were valid, it is subject to reduction for apportionment of the fees incurred by Ms. Paulsell in effecting the settlement with the DOTD and to reduction for apportionment pursuant to the make-whole doctrine; and that the DHH failed to mitigate its damages. Thereafter, the DHH filed an “unopposed” motion for leave to file the petition for intervention, which was granted by the trial court.[3]
Following the trial court’s granting of the DHH’s motion to file a petition for intervention, Ms. Paulsell, Mr. Wagar, and *966 Mr. Penton filed a pleading titled “Exception of No Cause/No Right of Action or, alternatively, Motion for Summary Judgment to Dismiss the Petition for Intervention filed by the Department of Health and Hospitals.” The DOTD and the ORM also filed a motion for summary | ¿judgment in which they sought a ruling from the trial court on the issue of the DHH’s entitlement to reimbursement from the Future Medical Care Fund pursuant to DOTD’s settlement with Ms. Paulsell and La. R.S. 46:446.
On September 3, 2013, the trial court held a hearing to consider the exceptions and alternative motion for summary judgment filed by Ms. Paulsell, as well as the motion for summary judgment filed by the DOTD and the ORM. Following that hearing, the trial court denied the exceptions and alternative motion for summary judgment filed by Ms. Paulsell, but granted the motion for summary judgment filed by the DOTD and the ORM, signing judgments to that effect on September 10, 2013, and September 12, 2013, respectively. Ms. Paulsell was granted a devolutive appeal from the September 12, 2013 summary judgment in favor of the DOTD and the ORM, which judgment was designated as a final judgment pursuant to La. C.C.P. art. 1915(B) by the trial court.[4] Ms. Paulsell filed a separate application for supervisory writs to review the September 10, 2013 judgment denying the exceptions raising her objections of no right and no cause of action and alternatively denying her motion for summary judgment, which writ application, filed under docket number 2013 CW 1754, has been referred to this panel to be considered in conjunction with our review of Ms. Paulsell’s devolutive appeal under docket number 2013 CA 2117.
DISCUSSION
At issue is this appeal and the associated writ application is the application of La. R.S. 46:446, which statute provides, in pertinent part:
|fiA. When an injury has been sustained or an illness or death incurred by any person under circumstances creating in some third person or legal entity a legal liability or obligation to pay damages or compensation to that person or to his spouse, representative, or dependent, the Department of Health and Hospitals shall have a cause of action against such third party and/or may intervene in a suit filed by or on behalf of the injured, ill, or deceased person or his spouse, representative, or dependent against such third party to recover the assistance payments and medical expenses the Department of Health and Hospitals has paid or is obligated to pay on behalf of the injured, ill, or deceased person in connection with said injury, illness, or death. [Emphasis added.]
It is Ms. Paulsell’s contention that the DOTD and/or ORM is not a third party from which the DHH can seek reimbursement, because all three agencies es *967 sentially represent one entity, the State of Louisiana. The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate governmental unit for the particular purpose at issue.[5] Such a determination will depend on an analysis of specifically what the entity is legally empowered to do. Roberts v. Sewerage and Water Board of New Orleans, 92-2048 (La.3/21/94), 634 So.2d 341, 346-47.
The DHH is established as a body corporate with the power to sue and be sued. Further, DHH is “responsible for the development and providing of health and medical services for the prevention of disease for the citizens of Louisiana” | fiand for providing “health and medical services for the uninsured and medically indigent citizens of Louisiana.” La. R.S. 36:251. Likewise, the DOTD is also established as a body corporate with the power to sue and be sued; however, it is “responsible for developing and implementing programs to assure adequate, safe, and efficient transportation and other public works facilities and services in the state.” La. R.S. 36:501. Finally, the ORM is within the division of administration that is headed by the commissioner of administration. La. R.S. 39:1528. The commissioner of administration, through the ORM, is responsible for managing “all tort claims made against the state or any state agency whether or not covered by the Self-Insurance Fund” and managing “all state insurance covering property and liability exposure, through commercial underwriters or by self-insuring.” La. R.S.39:1535(A).
The particular purpose at issue in this matter is a determination of the DHH’s right to seek reimbursement from the medical proceeds of Patricia’s settlement with the DOTD. Congress has directed States, in administering their Medicaid programs, to seek reimbursement for medical expenses incurred on behalf of beneficiaries who later recover from third-party tortfeasors. States must require beneficiaries “to assign the State any rights ... to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party.” Wos v. E.M.A. ex rel. Johnson, — U.S.—, —, 133 S.Ct. 1391, 1396, 185 L.Ed.2d 471 (2013)(quoting 42 U.S.C. § 1396k(a)(l)(A)).
The U.S. Supreme Court, in Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 275-276, 126 S.Ct. 1752, 1758, 164 L.Ed.2d 459 *968 (2006)(footnotes omitted), succinctly explained:
The Medicaid program, which provides joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs, was launched in 1965 with the enactment of Title XIX |7of the Social Security Act (SSA), as added, 79 Stat. 343, 42 U.S.C. § 1396 et seq. (2000 ed. and Supp. III). Its administration is entrusted to the Secretary of Health and Human Services (HHS), who in turn exercises his authority through the Centers for Medicare and Medicaid Services (CMS).
States are not required to participate in Medicaid, but all of them do. The program is a cooperative one; the Federal Government pays between 50% and 83% of the costs the State incurs for patient care, and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program. See § 1396a.
One such requirement is that the state agency in charge of Medicaid ... “take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan.” § 1396a(a)(25)(A)(2000 ed.).
Moreover, 42 U.S.C. § 1396k(b) provides
any amount collected by the State ... shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.
Therefore, as outlined above, the reimbursement sought by DHH is not only pursuant to La. R.S. 46:446, but is required under federal law as a condition for the partial federal funding of our state Medicaid program. While federal money does not fully fund our state Medicaid program, at least half, if not more, of the state’s Medicaid funding comes from federal funds. The exact percentage of the federal contribution is calculated using a formula keyed to the state’s per capita income. See 42 U.S.C. § 1396d(b) and Ahlborn, 547 U.S. at 275, 126 S.Ct. at 1758 n. 4. Hence, as La. R.S. 46:446 was adopted as a requirement of federal law, it is proper to consider the federal authority by which La. R.S. 46:446 was enacted to properly determine who is a “third party” for the purpose of determining whether the DHH is entitled to seek reimbursement of state Medicaid expenditures from Patricia’s settlement with the DOTD.
| ^According to federal law, for purposes of the Medicaid program and the reimbursement requirement in particular, a third party is defined to mean “any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan.” 42 C.F.R. § 433.136. In this case, the party liable, pursuant to the April 6, 2009 consent judgment, is the DOTD. Thus, the DOTD would qualify as a “third party” under the federal definition provided in the applicable Medicaid regulations, because it is an entity liable to “pay all or part of the expenditures formedical assistance furnished under a State plan.” Moreover, the ORM also qualifies as a “third party,” because, as administrator of the Future Medical Care Fund through the state treasurer, it is responsible for issuing payments for Pátricia’s future medical expenses, “as incurred,” from the Future Medical Care Fund in compliance with La. R.S. 13:5106(B)(3)(c) and *969 89:1538.2 as ordered by the trial court in the consent judgment.
Accordingly, we find no error in the trial court’s conclusion that the DHH is entitled to seek reimbursement from the Future Medical Care Fund administered by the ORM. Likewise, we deny the associated writ application filed by Ms. Paulsell seeking a declaration that the DHH has no right or cause of action to seek such a reimbursement.
As for a second, related assignment of error raised by Ms. Paulsell regarding the trial court’s statements in its reasons for judgment that the ORM, as administrator of the Future Medical Care Fund, is a primary payer, we observe that the issue of “primary payer” is not properly before us in review of the September 12, 2013 summary judgment. The sole issues raised by the ORM and the DOTD in their motion for summary judgment was whether the DHH was entitled to seek reimbursement from the ORM for Medicaid payments made on behalf of Patricia relative to the injuries she sustained in the June 13, 2005 motorcycle accident and |flwhether the plaintiff is entitled to recover attorney’s fees in her action seeking to enforce the settlement with the DOTD. Furthermore, while the trial court did make reference to Medicaid being a payor of last resort, no such ruling is found in the summary judgment rendered. Rather, the summary judgment only holds that the DHH is entitled to reimbursement for Medicaid expenditures made on behalf of Patricia and that the plaintiff may not recover attorney fees for litigating “the propriety of ORM” not paying certain claims submitted for payment from the Future Medical Care Fund. Thus, we decline to consider whether the ORM is the “primary payer” in review of the summary judgment before us. See Wise v. Bossier Parish School Board, 02-1525, p. 8 n. 6 (La.6/27/03), 851 So.2d 1090, 1095 n. 6.
CONCLUSION
For the foregoing reasons, we affirm the summary judgment rendered by the trial court holding that the DHH can seek reimbursement for Medicaid expenditures made by DHH relative to the injuries Patricia sustained in the June 13, 2005 motorcycle accident from the settlement proceeds designated for Patricia’s future medical expenses. Moreover, we deny the associated writ application filed by Ms. Paulsell. All costs of this appeal are cast to Juanita Christine Paulsell, as curator of Patricia Jolynn Paulsell-Lathrop.
SEPTEMBER 12, 2013 SUMMARY JUDGMENT AFFIRMED; WRIT DENIED.

. A judgment of interdiction was rendered on February 14, 2006, wherein Patricia was interdicted and Ms. Paulsell was appointed her curatrix.

. DHH erroneously cited the date of the interdiction judgment as the date of the motorcycle accident in which Patricia sustained her injuries.

.DHH previously filed a petition for intervention on September 7, 2011, which the trial court denied as moot in a November 8, 2011 judgment.

. As the summary judgment at issue deals solely with the claim of reimbursement of the intervenor, DHH, we find that the summary judgment was properly certified as a final judgment. DHH’s claim for reimbursement has little relationship to Ms. Paulsell's unadju-dicated claim seeking to enforce the settlement agreement in regards to payment of certain claims presented to the ORM by Ms. Paulsell. Further, there is little possibility that the issue of the reimbursement owed to the DHH will be revisited in future proceedings. See R.J. Messinger, Inc. v. Rosenblum, 04-1664, p. 14 (La.3/2/05), 894 So.2d 1113, 1122-23. Thus, we find that the summary judgment was properly certified as a final judgment, and our appellate jurisdiction to review this matter properly invoked. See La. C.C.P. art. 2083.

. We observe that "the particular purpose at issue” can be highly determinative of the issue of juridical status. Notably, in applying this same principle, several federal courts have held that Louisiana state courts do not qualify as juridical persons who possess the capacity “to sue or be sued.” See e.g. Hall v. Louisiana, 974 F.Supp.2d 957, 963 (M.D.La.2013). However, in two separate cases, the Louisiana Fifth Circuit Court of Appeal expressly found that the Louisiana courts at issue did have the authority to sue and be sued. See Morgan v. Laurent, 06-467, pp. 7-11 (La.App. 5th Cir.12/27/06), 948 So.2d 282, 285-88, writ denied, 07-0178 (La.3/16/07), 952 So.2d 701 (wherein the court held "in master-servant liability matters!, the] Second Parish Court for the Parish of Jefferson is a juridical entity and as such can be named as a defendant in this lawsuit”) and Beevers v. Jefferson Parish Juvenile Court, 552 So.2d 1317, 1322 (La.App. 5th Cir.1989), writ denied, 556 So.2d 1281 (La.1990) (wherein the court held "[i]n this suit[, the] Juvenile Court functions in an administrative capacity and as a litigant, seeking adjudication of its rights. It has standing to maintain this appeal.”). See also Welborn v. 19th Judicial District Court, 07-1087 (La.1/16/08), 974 So.2d 1 (wherein the suit against two separate state courts was not only maintained, but the authority of the courts to be sued was not even questioned).