634 So.2d 14 (1994)
Jean W. GASPARD
v.
DEPARTMENT OF STATE CIVIL SERVICE.
Claudette GORDON
v.
DEPARTMENT OF STATE CIVIL SERVICE.
Ardis D. LAMB
v.
DEPARTMENT OF STATE CIVIL SERVICE.
Nos. 93 CA 0311, 93 CA 0312 and 93 CA 0313.
Court of Appeal of Louisiana, First Circuit.
March 11, 1994.
Richard Upton, Baton Rouge, for Jean W. Gaspard, Claudette Gordon and Ardis D. Lamb, plaintiffs-appellants.
Barbara T. Puchot, New Orleans, for Dept. of Health and Hospitals, co-appellants.
Robert R. Boland, Jr., Baton Rouge, for Dept. of State Civ. Service, defendant-appellee.
Before WATKINS, SHORTESS and FOGG, JJ.
SHORTESS, Judge.
The consolidated appeals of Jean Gaspard, Claudette Gordon, and Ardis Lamb (plaintiffs) arise from the denial by the Department of Civil Service (the Department) of plaintiffs' requests for Civil Service Rule 19.11 pay adjustments.

A. The "Walkover"
A new classification plan was implemented by the Department of Civil Service on January 1, 1987. Because most employees' jobs were not upgraded, it is referred to as "the walkover." Some jobs, however, were upgraded *15 and new ones were created. The Department subsequently set new pay ranges for the newly-created jobs and gave deferred raises for jobs which were upgraded. The walkover caused some problems that did not previously exist. A common complaint was that subordinates began to earn more than their superiors, even though the superiors had more seniority. Some problems were solved by the passage of time and routine personnel actions, such as promotions, reallocations, and job upgrades. Some problems remained, however, so the Civil Service Commission (Commission) adopted Rule 19.11, which reads, in pertinent part:
19.11 Individual Pay Adjustments
(a) When an appointing authority determines that the relationship of individual pay rates resulting from the implementation of the January 1, 1987 Pay Plan adversely affects the efficiency of a work unit(s), the Director may grant a request for an individual pay adjustment. Each request must include certification that funds are available to implement the request, the proposed amount of adjustment, a detailed explanation of the methodology used to determine the appropriate adjustment and explicit reasons why an individual pay adjustment is necessary to correct the existing management problem. The Director shall include a listing of all approved adjustments in his monthly report to the Commission.
The Commission also adopted other rules and mechanisms for solving certain types of pay problems. The adoption and constitutionality of Rule 19.11 has not been attacked.
A committee of personnel officers and representatives from small and large agencies, the Governor's office, and the Department was formed to develop specific criteria for statewide application, which would be used to determine which individuals qualified for pay adjustments under Rule 19.11. The criteria were published October 9, 1989, in General Circular 934. The criterion at issue in this appeal is number 10, which reads: "The proposed adjustment shall be granted only to those employees who are directly affected by the pay problem as of the approved effective date."
The Department decided the "approved effective date" would be the date that the Department received the Rule 19.11 request.

B. The Plaintiffs
Prior to the walkover, plaintiffs and Faye Sonnier were all classified as "Clerk IV" and paid $1,286.00 per month. All four are supervisors who perform identical work in different health units. After the walkover, Jean Gaspard and Ardis Lamb were reclassified as "Office Coordinator 1," and Claudette Gordon and Faye Sonnier were reclassified as "Clerk Chief 2." All four continued to be paid $1,286.00 per month. Effective January 1 and July 1, 1988, employees whose jobs were upgraded in the walkover received deferred pay adjustments. Plaintiffs and Sonnier were all receiving $1,338.00 per month at this time.
The Department of Health and Hospitals requested pay adjustments under Rule 19.11 for numerous employees, including plaintiffs and Sonnier.[1] The Department received the requests July 16, 1990. As of that date, the pay relationships among plaintiffs, Sonnier, and their subordinates were:

 Jean Gaspard Office Manager 3 GS 11 $1,567.00
 C. Menard Caseworker Asst. GS 9 1,556.00
 C. Hayes Office Manager 2 GS 10 1,622.00
 R. Lacasse Caseworker Asst. GS 9 1,267.00
 M. Reese Caseworker Asst. GS 9 1,195.00
 Claudette Gordon Office Manager 4 GS 12 $1,733.00
 S. Thompson Clerk 4 GS 8 1,608.00
 C. Colquette Caseworker Asst. GS 9 1,556.00

*16
 N. Doucet Office Manager 3 GS 11 1,463.00
 D. Stalsby Caseworker Asst. GS 9 1,510.00
 Ardis Lamb Office Manager 4 GS 12 $1,676.00
 R. Hebert Caseworker Asst. GS 9 1,267.00
 L. Fruge Clerk Chief 2 GS 10 1,303.00
 L. Robinson Caseworker Asst. GS 9 1,556.00
 B. Weeks Caseworker Asst. GS 9 1,149.00
 Faye Sonnier Clerk Chief 2 GS 10 $1,567.00
E. Couvillion Caseworker Asst. GS 9 1,630.00
 J. Marks Caseworker Asst. GS 9 1,320.00
 R. Frederick Caseworker Asst. GS 9 1,269.00
 S. Trahan Caseworker Asst. GS 9 1,195.00
 M. Duchaine (resigned)

After a hearing, the Commission found that beginning September 19, 1988, one of Gaspard's subordinates earned more than she as a result of the walkover. This problem was solved July 1, 1990, when Gaspard received a pay adjustment under another rule. Beginning January 9, 1988, one of Gordon's subordinates earned more than Gordon as a result of the walkover. This problem was solved January 24, 1990, when Gordon's job was reallocated from Clerk Chief 2 to Office Manager 4. Lamb never had a subordinate who earned more than she as a result of the walkover. At the time the request was received by the Department, C. Hayes, one of Gaspard's subordinates, earned more than Gaspard, but not as a result of the walkover.[2] Thus, the Department found, and the Commission also found, Sonnier was the only one of the four women who still had a pay problem (1) at the time the request was received and (2) as a result of the walkover.
A reviewing court should not disturb the factual findings made by the Commission in the absence of manifest error. Walters v. Department of Police, 454 So.2d 106, 113 (La.1984); Greenleaf v. DHH, Metropolitan Developmental Center, 594 So.2d 418, 427 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (La.1992). We find no manifest error in the above factual findings. Furthermore, plaintiffs do not contest the Commission's factual findings.

C. Criterion Number 10
Plaintiffs contend the application of criterion number 10 established in General Circular 934 resulted in discrimination. They also argue choosing that "effective" date was arbitrary.
The Commission has "broad and general rule making ... powers for the administration and regulation of the classified service," including the power to adopt rules for regulating compensation.[3]
General Circular 934 was not formally adopted as a Civil Service rule, thus was not subject to public comment, publication and formal adoption procedures. A committee developed the criteria to give more specific guidance to agencies making requests for Rule 19.11 pay adjustments. The method the Commission used in convening the committee was a valid exercise of its "broad and general" power to regulate compensation. Furthermore, the criteria, as published, do no more than restate what is already contained in Rule 19.11.
The "effective date" is not stated in the circular. Rather, it was left up to the Department to decide. The date chosenwhen the Department receives the requestis commonly used by the Department for making determinations in other personnel matters. Anna Paxton, Assistant Chief of Classification and Pay, testified at plaintiffs' hearing that this effective date was chosen because almost all personnel actions are determined by that standard, including allocations, reallocations, and assignment of job titles.
*17 In this case, she testified, it also was important for determining whether the pay problem still existed.[4] Rule 19.11, which has not been attacked, specifically states the requested adjustment must be to redress an existing pay problem. Therefore, choosing an effective date was a valid exercise of the Commission's power, and date of receipt of a request by the Department was not arbitrary.

D. Equal Pay for Equal Work
Plaintiffs also contend that because they and one of their peers are doing the same work, the pay adjustment allowed only to their peer violates the fundamental notion that there should be equal pay for equal work, citing Thoreson v. Department of State Civil Service, 433 So.2d 184 (La.App. 1st Cir.), writs denied, 440 So.2d 726, 727 (La. 1983).
The Commission has a constitutional trust to establish and implement a uniform classification and pay plan.[5] Part of this duty is to effectuate equitable distribution among all classified employees in accordance with the basic purposes of a merit system. Thoreson, 433 So.2d at 202. Louisiana Constitution article 10, section 10, requires that the same schedule of pay apply to all positions in the same class. Clark v. State, 434 So.2d 1276 (La.App. 1st Cir.), writ denied, 440 So.2d 152 (La.1983). The Commission is not mandated to pay individuals within the same class the exact same pay. Indeed, such a conflict with the authority in article 10, section 7, to give individual promotions "under a general system based on merit, efficiency, fitness, and length of service, ..."[6]
Plaintiffs rely on Thoreson for the proposition that persons doing equal work should receive equal pay. That statement in Thoreson is misapplied to these facts. Thoreson involved partial implementation of a system-wide pay plan, which resulted in a violation of the Commission's constitutional duty to implement a "uniform pay plan."
The rationale behind the Thoreson holding was that since the Commission possessed sole authority to institute pay plans for Civil Service employees under our constitutional scheme, independent from and exclusive of the executive and legislative branches, it was under a strict obligation to adopt a pay plan that embodied the highest ideals of a merit system, including uniformity. Factually, there we had two different job classes and pay scales for engineers doing exactly the same work. We stated: "It is a fundamental notion that employees who perform equal work should receive equal pay." Thoreson, 433 So.2d at 195. We referred to pay scales, not exact dollar amounts. Thoreson does not stand for the proposition that individuals should receive the exact same amount of pay, dollar for dollar, for the same work.
Plaintiffs in this case do not attack the scales of pay they receive as being discriminatorily applied. Rather, their argument basically is that each person should be paid the exact same dollar amount. For the above reasons, Thoreson is inapposite to this case, and plaintiffs' argument has no merit.
The decision of the Civil Service Commission is affirmed. Costs of this appeal are assessed to plaintiffs.
AFFIRMED.
NOTES
[1] The Department of Health and Hospitals answered these appeals and asked to be recognized as a co-appellant in each appeal.
[2] Hayes's job was reallocated from Clerical Assistant Supervisor (GS-8) to Office Manager 2 (GS-10), effective July 12, 1989, which is what caused her pay to surpass Gaspard's.
[3] La.Const. art. X, § 10.
[4] Paxton testified the Department received numerous requests for Rule 19.11 pay adjustments from individuals who were no longer even in the same agency. This was one reason the Department needed to ensure a pay problem still existed in the agency, as stated in Rule 19.11.
[5] La.Const. art. X, § 10.
[6] We note that at the time the request for an adjustment under 19.11 was received, Gaspard was the only plaintiff making the exact same salary as Sonnier. In fact, Gordon's salary was higher than Sonnier's even after Sonnier received a 10.5% increase under 19.11. Plaintiffs do not suggest that intervening raises they received, which placed them in unequal salary positions as of July 16, 1990, violate the premise of "equal pay for equal work."