71 So.3d 1104 (2011)
Paxton MORGAN, Mitchell Davis, Richard Davidson, Chris Thedford Chad Burden, Billy G. Lewis, and Robert W. Taggart, Plaintiffs-Appellants
v.
CITY OF SHREVEPORT, Defendant-Appellee.
No. 46,362-CA.
Court of Appeal of Louisiana, Second Circuit.
July 13, 2011.
Rehearing Denied August 4, 2011.
*1105 Pamela R. Jones, Shreveport, LA, for Appellants.
Barham, Warner, Stroud & McKay, LLC, by A.M. Stroud, III, Jennifer P. McKay, Shreveport, LA, for Appellee.
Before BROWN, CARAWAY and PEATROSS, JJ.
BROWN, Chief Judge.
Five Shreveport firefighters filed suit against the City of Shreveport ("the City") alleging that the City's incentive pay plan discriminates in violation of the equal protection guarantee of Louisiana Constitution Art. I, § 3. Plaintiffs seek damages, backpay, and adjustments and contend that only the Shreveport Municipal Fire and Police Civil Service Board ("the Board") has the authority to enact an incentive pay plan. They further claim the plan used by the City, which was not established or approved by the Board, is arbitrary and discriminatory.
The material facts are not disputed. The City sought summary judgment. Plaintiffs also sought partial summary *1106 judgment on the issue of liability. The trial court denied plaintiffs' motion for partial summary judgment, granted the City's motion for summary judgment and dismissed the lawsuit with prejudice. Plaintiffs have appealed. We affirm.

Facts and Procedural Background
The City maintains a base pay schedule for classified fire service employees in accordance with the state statutory requirements of La. R.S. 33:1992. These salary requirements for classified employees can be increased with longevity, state supplemental and incentive pay. At issue in the present case is incentive pay for emergency medical supervisors, bomb technicians, air rescue firefighters and hazardous materials technicians.
As to incentive pay, La. R.S. 33:2586 provides:
The fire and police civil service board . . . may establish a plan for awarding incentive pay to classified employees. The plan shall include the criteria for eligibility for incentive pay, the method by which classified employees shall be reviewed for eligibility, and how such eligibility shall be determined. Determination of the amount of incentive pay and which classified employees are to receive incentive pay shall be made by the appointing authority for the municipality, parish, or fire protection district subject to available funds budgeted for such purpose. The incentive pay awarded under the provisions of this Section shall be in addition to any other salary the classified employee is entitled to receive from the municipality, the state, or any other governmental entity. (Emphasis added).
In 1998, the Shreveport Fire Department formed a strategic planning team to establish criteria for determining the need for and amounts of incentive pay. Upon the team's recommendation, the City adopted an incentive pay plan for the Shreveport Fire Department.
Fire Department Administrative Procedure No. 46 implements the City's incentive pay program. As it pertains to the present litigation, the incentive pay plan recognized that obtaining certification as a hazardous materials technician was the equivalent of an Associate Degree and awarded $100 per month as an educational incentive. Rather than this educational pay, actual members of a Hazardous Materials Technicians Team receive incentive pay of $150 per month. At the heart of plaintiffs' case is that only a limited number of certified hazardous materials technicians are assigned to a team. These team positions are limited to "a total of forty-five (45) HMT's at rank of captain or below, and up to six district chiefs, with a maximum of 51 positions." To obtain these positions, an employee had to be appropriately certified and must be "assigned to Rescue 1 or 9, Engine 1 or 9, Truck 1 or 9, District Chiefs assigned to District 1 or 4, or be in a swing position." Stations 1 and 9 have specialized equipment not found at the other 20 stations. When members receiving HazMat incentive pay choose to promote to a division other than the Training Division, eligibility for pay would cease.
Plaintiffs, Paxton Morgan, Michael Davis, Richard Davidson, Chris Thedford, and Billy Lewis, are all employed by the Shreveport Fire Department in the fire line division and are certified as hazardous material technicians. At various times, each received the $100 per month education pay or the HazMat Team incentive pay of $150 per month. Morgan presently serves on a HazMat Team and receives the $150 per month incentive pay as a swing man. Davis and Davidson receive HazMat team incentive pay of $150 per month as HazMat Team members. Thedford receives *1107 only the $100 per month education pay. Lewis draws the $100 per month education pay; he lost his $150 per month HazMat Team pay when he bid to work at station 20.[1]
Plaintiffs filed suit against the City seeking pay adjustments. Specifically, plaintiffs argued that the City had no authority to set the criteria for the award of incentive pay and thus the criteria could not be enforced as a legitimate basis for difference in pay within the classifications. They argue that under La. R.S. 33:1992, only the Board was authorized to establish a plan for incentive pay for classified employees. Plaintiffs believe there is only one classification and contend that La. R.S. 33:1969 required each person in that classification be paid equal compensation. That provision reads as follows:
Equal recognition and compensation shall be received for equal performance of duty and responsibility.
Plaintiffs argue that the City's incentive pay plan cannot be enforced as a basis for differences in pay; that each employee must be treated equally; and, that the "baseline for uniform pay should be the highest amount of incentive pay that was paid to any position in the class." In its opinion, the trial court noted, "[I]f this court were to accept plaintiffs' argument that the incentive pay plan is unconstitutional, the plaintiffs would lose their incentive pay, not gain someone else's."
Alternatively, plaintiffs argue that the incentive pay plan created promotional classifications for which they were qualified and obtained by seniority and thus were entitled to promotional pay increases.
The City filed a motion for summary judgment. Its motion was supported by documents, affidavits, and deposition testimony. Plaintiffs opposed the City's motion by written argument referencing documentation submitted with plaintiffs' partial summary judgment motion filed the same day as well as with additional exhibits.
The trial court granted summary judgment in favor of the City, dismissing the entirety of plaintiffs' claims with prejudice. By separate written judgment, the court denied plaintiffs' motion for partial summary judgment. Plaintiffs have appealed.

Discussion
Each side produced affidavits and discovery material which shows that both sides agree that the City set up the incentive pay plan without the use of a civil service board. Both sides agree on the salaries and incentive pays, including the amounts that plaintiffs received as a result of the City's plan.
Article VI, § 5(A) of the Louisiana Constitution grants municipalities the power to set up home rule charters. The Louisiana Constitution grants the exercise of any power and performance of any function necessary, requisite or proper for the management of its affairs, not denied by general law or inconsistent with constitution. La. Const. Art. VI, § 5(E). The Plan of Government for the City of Shreveport, adopted on May 13, 1978, states that the City has "all rights, powers, privileges, and authority that it has or could claim. . . except as herein modified." Nothing in the home rule charter expressly denies the power to set up incentive pay plans. Since the City is granted "any power. . . not denied by general law or this constitution," the City will have only the power to create an incentive pay plan if it is not expressly denied. No statute or provision of the Louisiana Constitution could be found that *1108 expressly denies local municipalities the authority to establish their own incentive pay plans.
The only statute dealing with incentive pay for firefighters is La. R.S. 33:2586 which provides that the fire and police civil service board may establish a plan for awarding incentive pay to classified employees. (Emphasis added). However, the statute further provides that the determination of the amount of incentive pay and which classified employees are to receive incentive pay shall be made by the appointing authority (the municipality), and the incentive pay awarded shall be in addition to any other salary the classified employee is entitled to receive from the municipality.
The statute clearly says that any incentive pay plan a civil service board sets up is in addition to any other salary. The incentive pay the firefighters receive based on the City's independent plan is part of their salary. The civil service board "may" set up an incentive plan concurrently with the City that is additional to that salary. This permissive language is further evidence that the incentive pay plan of the civil service board is concurrent or supplemental to any pay plan the City sets up. The civil service board can forgo setting up any additional incentive pay plan if it chooses. If the civil service board were to set up a concurrent incentive pay plan, it would still be up to the appointing authority (the City) to set a pay schedule for that plan. The City would then be able to choose to fund its own incentive pay plan, the civil service board's incentive pay plan, or neither.
The City's challenged incentive pay plan was enacted in 1998, 13 years ago. This plan has been in operation since then, and nearly all firefighters receive some sort of incentive pay. In that entire time, the civil service board never challenged the plan or adopted its own. This inaction on the part of the board seems to be a tacit ratification or approval of the City's plan.
Therefore, since the City's power to set up its incentive pay plan is not expressly denied by statute or constitution, since the Louisiana Constitution grants broad powers of home rule, and since the City's home rule charter accepts that broad power, the City had the authority to set up an incentive pay plan.
The purpose of La. R.S. 33:1992 and other statutes governing the pay of firefighters is to provide uniform standards for the minimum wages and working conditions of firefighters. New Orleans Firefighters Local 632 v. City of New Orleans, 03-1281, (La.App. 4th Cir.05/26/04), 876 So.2d 211. These statutes set up the structure and basic payment of firefighters according to the rules of civil service.
Nothing in the statute requires that all firefighters within one of these categories be paid the same. In La Grange v. Fire Prot. Dist. No. 4 of St. Tammany Parish, 03-0240 (La.App. 1st Cir.11/07/03), 868 So.2d 40, the First Circuit Court of Appeal held that no statute requires each member of a class to be paid the same regardless of different levels of education and job responsibilities. The firefighters receiving incentive pay receive higher pay for certain certifications, and when those skills are put to use.
If the legislature intended for all firefighters in a class to be paid the same, regardless of specific duties and qualifications, they never would have passed La. R.S. 33:2586, because it allows for unequal pay. The very idea that it is an incentive implies that some get the pay and others do not.
La. R.S. 33:2586 also shows that the legislature did not intend for a rigorous application of La. R.S. 33:1969 for similar *1109 reasons.[2] If any new duty or responsibility would trigger a new position or class, then incentive pay would rarely ever be valid, because the incentive pay implies a specialized responsibility or duty. Under plaintiffs' view, incentive pay would rarely be allowed since it would violate La. R.S. 33:1969. This interpretation would also make La. R.S. 33:2586 superfluous.
Therefore, since the legislature specifically provides for instances of incentive pay, the statutory framework does not require that all firefighters be paid the same.
The firefighters finally contend that they be paid a higher salary because the incentive pay plan that the City implemented violates the equal protection clause of the Louisiana Constitution in that it discriminates against them. They claim it is a discrimination because those on the slot-limited HazMat Team are paid $150 per month in incentive pay while others with a hazardous materials technician certification get only $100 per month as education pay.
The Louisiana Constitution, in Article I, § 3, protects against discriminatory laws. It states:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
Article I, § 3 commands the courts to decline enforcement of laws classifying individuals in three situations: (1) When the law classifies individuals by race or religious belief, the law shall be repudiated completely; (2) when the law classifies individuals on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; and, (3) when the law classifies individuals on any other basis, it shall be rejected when any member of a disadvantaged class shows that it does not suitably further any appropriate state interest. See In re State ex rel. A.J., 09-0477 (La.12/01/09), 27 So.3d 247.
The City's incentive pay plan does not classify the firefighters based on race, religion, birth, age, sex, culture, physical condition, or political ideas or affiliations. The incentive pay plan classifies the firefighters based on educational certification and employment roles. Therefore, the only way the City's incentive pay plan may be rejected is if a disadvantaged individual shows that it does not suitably further any appropriate interest of the City.
The City has clearly shown that the classification suitably furthers an appropriate interest. One of the highest interests any government has, local government in particular, is the interest of protecting its citizens from harm. The fire department is set up to do just that. It protects citizens from fire damage, bomb threats, hazardous material spills, etc. To better provide these services, the City has provided incentives for firefighters to be better *1110 trained for the lifesaving and property-protecting services they provide. The $100 per month incentive to obtain a hazardous materials technician certification is meant to encourage firefighters to obtain higher skills. Those firefighters who receive the certification get a boost in pay. This furthers the interest of the City in being better equipped to protect the public.
Other firefighters are given additional incentive when they actually serve on the HazMat Team and are placed in a more dangerous situation. The City obviously has an interest in cleaning up hazardous materials and having a team of firefighters to clean up the materials is an interest that is furthered by the incentive pay.
The City also has an interest in limiting the number of members to the HazMat Team. Here the interest is logistical and financial. The financial resources of the City are limited, and as a result it cannot afford to give every firefighter the HazMat Team incentive pay. Further, the City only needs a finite number of people on the team. It would serve no purpose to allow an unlimited number of firefighters to serve on the team when they are not needed. Since extra firefighters are not needed, they are not on the HazMat Team. Since they are not on the HazMat Team, they are not paid for it. The HazMat Team has the added responsibility of actually cleaning up the hazardous materials. Therefore, the City's incentive pay plan does not violate the Louisiana Constitution, Article I, § 3.
Plaintiffs here seek to have the court invalidate the incentive pay plan, allow them to keep the incentive pay that they have received under the plan they want invalidated, and order that they be paid the highest amount of incentive pay available under the plan they claim is invalid. If the incentive pay plan were invalidated, the pay they received would be invalidated, as well as the higher pay along with it.

Conclusion
Since there is no genuine issue of material fact, and for the foregoing reasons, the City is entitled to a judgment as a matter of law, the trial court's judgment granting summary judgment in favor of the City of Shreveport and separate judgment denying partial summary judgment for the firefighters is affirmed.
CARAWAY, J., dissenting.
Since I find the Shreveport Municipal Fire and Police Civil Service Board (the "Board") is an indispensable party to this controversy, I would set aside the ruling of the trial court and remand for joinder of the Board. La. C.C.P. art. 927(B).
A municipal fire and police civil service board is a political subdivision, distinct from the municipal government, with separate constitutional and statutory governance under the law. La. Const. art. X, § 16; La. R.S. 33:2471, et seq. The jurisprudence demonstrates controversies litigated directly between a municipality and its civil service board. City of Kenner v. Lawrence, 365 So.2d 1301 (La.1978); City of Kenner Fire Dep't v. Mun. Fire and Police Civil Serv. Bd., 97-228 (La.App. 5th Cir.9/30/97), 700 So.2d 1114. A civil service board has an interest in the maintenance of a cohesive personnel policy. City of Kenner v. Lawrence, supra at 1303. A board has an "interest in securing a judicial determination" of an "issue of general concern to civil service administration." Id.
Such an issue of civil service administration underlies the current dispute involving the statutory interpretation of La. R.S. 33:2586. Under that statute, the Board's discretionary power to create an incentive pay plan for classified employees is arguably an extension of its exclusive power *1111 under La. R.S. 33:2477(8) to "[a]dopt and maintain a classification plan." More specifically, La. R.S. 33:2483 requires the civil service board to adopt a classification plan consisting of "classes to be designated either by standard titles, ranks, or a combination thereof, for all positions included in the classified service. . . ." Also, under La. R.S. 33:2492, it is the civil board, not the municipality, that establishes "tests to determine the eligibility of applicants for entry upon the promotional and competitive employment lists." "All tests shall be restricted to those matters which will fairly test the relative capacity and fitness of the candidates to discharge the duties characteristic of positions of the class to which they seek to be appointed." La. R.S. 33:2492(4). With this longstanding statutory authority of the civil service board in our law, the legislature enacted in 1982 the now disputed incentive pay statute, La. R.S. 33:2586, as a "miscellaneous provision" and adjunct power for the overall authority of civil service boards. Despite this statutory framework, the City now asserts that the civil service administration of incentive pay plans for classified employees falls within its municipal powers. The Board certainly must be an indispensable party in this litigation before an answer to the City's assertion and a declaratory judgment for the operation of this statute may be given.
Additionally, this statutory authority issue is not limited to this small group of firefighters' claim of an unfair civil service structure created by the City's incentive pay plan and their past and future incentive pay claims. All firemen in the City, whether receiving incentive pay or not, can make similar claims. Moreover, such claims arguably may fall exclusively within the Board's jurisdiction for resolution; yet this action was commenced in the district court. The Board's participation in this litigation will ensure that these broader issues regarding all firefighters and the Board's jurisdiction are appropriately examined.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] All plaintiffs at all times since the imposition of the incentive pay received an additional $50 for certification as EMTs. They received this whether they were on the HazMat team.
[2] La. R.S. 33:1969 states that equal recognition and compensation shall be received for equal performance of duty and responsibility. As noted by the trial court and in the Reporter's Notes to the article, this section is necessary only insofar as municipalities of 10,000 to 13,000 are concerned because the Municipal Fire and Police Civil Service Law covers the situation in those over 13,000.